*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTOPHER R. NEARY,

          Petitioner,

v.

GENERAL SERVICES ADMINISRATION,

          Respondent.

Civ. Action No. 20-00720 (FLW)

OPINION

**WOLFSON, Chief Judge**:

This matter has been opened to the Court by Christopher R. Nearby ("Petitioner") on a motion, pursuant to the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410(a), objecting to a subpoena issued by the Office of the Inspector General for the United States General Services Administration ("GSA OIG"). Specifically, Petitioner seeks to enjoin GSA OIG from obtaining access to certain financial records of Petitioner from American Express. GSA OIG submitted a response to Petitioner's motion to the Court for *in camera review*, pursuant to 12 U.S.C. § 3410(b). I have considered the parties' submissions, and, for the following reasons, Petitioner's motion is **DENIED**.

**I.    BACKGROUND**

On December 20, 2019, GSA OIG served a subpoena ("Subpoena") on American Express, pursuant to Section 6(a)(4) of the Inspector General Act of 1978, 5 U.S.C. app. 3, §§ 1-13, in

1

connection with an ongoing law enforcement investigation. (Flanagan Decl. ¶ 2.)[1] The Subpoena seeks, "[f]or the period of January 1, 2013 to the present, all documents pertaining to all open or closed credit card accounts, including joint accounts, in the name of or under signature authority" of Petitioner. (Flanagan Decl. at ¶ 19, Ex. A.)

On the same date, December 20, 2019, GSA OIG mailed a "Customer Notice" with a copy of the Subpoena to Petitioner, as required by 12 U.S.C. § 3405. (Flanagan Decl. at ¶ 18, Ex. D.) This notice stated that the purpose of the Subpoena was to "investigate [Petitioner's] role with VE Source, LLC, a Service Disabled Veteran Owned Small Business[] (SDVOSB) federal government contractor." (*Id*.) The notice also advised Petitioner of the procedures for challenging the Subpoena and provided sample forms for doing so. (*Id*.) Petitioner executed a certified mail return receipt on January 8, 2020, which confirmed that he had received the notice on that date. (Daphne Decl. at ¶ 6, Ex. B; Pet.'s Statement, ECF 1-3, at ¶ 4.)

On January 22, 2020, Petitioner filed the present motion seeking to enjoin GSA OIG from obtaining records pursuant to the Subpoena. (ECF No. 1.) Petitioner accompanied the motion with a sworn statement, consistent with the requirements of 12 U.S.C. §§ 3410(a), in which he contends that "some or all of the financial records sought by [GSA OIG] are not relevant" to GSA OIG's investigation. (Pet.'s Statement, ECF 1-3, at ¶ 5.) More specifically, Petitioner states that he has two different credit card accounts with American Express—a "Platinum" card account and a "Gold" card account—but that has never used the Gold card account for transactions related to VE Source, LLC. (*Id*. at ¶¶ 6-7.) On that basis, Petitioner contends that any documents from American Express related to the Gold card account are not relevant, and, therefore, the subpoena

---

[1] References to "Flanagan Decl." are to the Declaration of Sean Flannagan, and references to "Muse Decl." are to the Declaration of Daphne Muse. Both of these declarations were submitted by GSA OIG to the Court for *in camera* review, pursuant to 12 U.S.C. § 3410(b).

2

should be modified to require only production of documents related to the Platinum card account. (*Id*. at ¶ 8.)  Additionally, Petitioner objects to the Subpoena on the ground that American Express might "inadvertently" produce financial records from a time period preceding the period called for in the Subpoena, *i.e*., prior to January 1, 2013.[2]

On February 4, 2020, GSA OIG submitted a response to Petitioner's motion for *in camera review*, pursuant to 12 U.S.C. § 3410(b).  In its response, GSA OIG contends that Petitioner's motion should be denied, because the Subpoena seeks records that GSA OIG reasonably believes are relevant to a legitimate law enforcement investigation.  GSA OIG also details the nature of its investigation into Petitioner's role with VE Source, LLC and the reasons for seeking documents from American Express under the Subpoena.

## II. DISCUSSION

Under the Right to Financial Privacy Act of 1978, a customer may file "a motion to quash an administrative summons or judicial subp[o]ena, or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request," with copies served upon the government authority. 12 U.S.C. § 3410(a).  The motion or application must be made within "ten days of service or within fourteen days of mailing of a subp[o]ena, summons, or formal written request" seeking financial records.[3]  *Id*.  The motion or application must also be

---

[2]  Petitioner further objects to the Subpoena on the ground that the document requests are "grossly overbroad," and contends that "the government should be required to present a more narrowly tailored request." (ECF No. 1-3 at ¶ 14.)  Having considered the nature and scope of GSA OIG's investigation, as detailed in GSA OIG's response, I find that the Subpoena is sufficiently limited by time period (*i.e*., January 1, 2013 through December 18, 2019) and subject matter (*i.e*., documents pertaining to credit card accounts for a specific customer).

[3]  In addition to the reasons that I provide below for denying Petitioner's motion, I also find that the motion is untimely.  The Subpoena was mailed to Petitioner on December 20, 2019, and received by Petitioner on January 8, 2019.  Therefore, the 14-day period to file based on mailing expired on January 3, 2020, and the 10-day period to file based on service expired no later than January 20, 2020.  Petitioner did not file his motion, however, until January 22, 2020.

accompanied by a sworn statement or affidavit from the customer stating, *inter alia*, "the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter." *Id*. The customer must effect service upon the Government authority at issue. *Id*. If the customer complies with these requirements, the district court must "order the Government authority to file a sworn response." *Id*. § 3410(b).

After receiving such a response, "the motion or application [must be] decided within seven calendar days." *Id*. The district court must deny the motion or application if the court finds (1) "a demonstrable reason to believe that the law enforcement inquiry is legitimate" and (2) "a reasonable belief that the records sought are relevant to that inquiry." 12 U.S.C. § 3410(c); *see also Sandsend Fin. Consult., Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 877, 879 (5th Cir. 1989) (noting the "narrowly circumscribed nature of the court's discretion under the RFPA," and explaining that "[t]he court's inquiry is limited to two questions: (1) whether the investigation is for a proper statutory purpose and (2) whether the documents the agency seeks are relevant to the investigation"). Having considered Petitioner's motion and GSA OIG's response, I deny Petitioner's motion.[4]

*First*, I find that there is a demonstrable reason to believe that the Subpoena was issued in connection with a legitimate law enforcement inquiry. The Inspector General Act of 1978, as amended, 5 U.S.C. App. 3 ("IG Act"), created the Office of the Inspector General of the U.S. General Service Administration with a mandate to, *inter alia*, "conduct and supervise audits and investigations" and "prevent and detect fraud and abuse" in the General Service Administration's

---

[4] The Court necessarily limits its discussion because GSA OIG's response has sensitive law enforcement information.

programs and operations. 5 U.S.C. App. 3 §§ 2, 4, 12(2). As an agency vested with the power to investigate wrongdoing, GSA OIG's "investigatory authority is far-reaching, analogous to that of a grand jury, which 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950)). In furtherance of those objectives, Section 6(a)(4) of the IG Act authorizes GSA OIG to issue subpoenas for the "production of all information, documents, reports, answers, records, accounts, papers, and other data in any medium . . . and documentary evidence necessary in the performance of the functions assigned by [the IG Act]." *Id*. § 6(a)(4).

GSA OIG's *in camera* submissions show that, consistent with its mandate to prevent fraud and abuse, GSA OIG opened an investigation after detecting possible fraud related to the General Service Administration's government contract programs. GSA OIG's submissions further reveal that GSA OIG has garnered information from a wide range of sources that merits inquiring into Petitioner's role vis-a-vis VE Source, LLC. Such an investigation falls squarely within GSA OIG's statutory mandate under the IG Act and, therefore, is a legitimate law enforcement inquiry.

*Second*, I find a reasonable belief that the records sought are relevant to GSA OIG's inquiry. "For purposes of an administrative subpoena, the notion of relevancy is a broad one," and material requested in a subpoena is relevant if it "touches a matter under investigation." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (finding that subpoenas issued under the IG Act could withstand a challenge even where there was only a "tangential relationship" or "loose connection" between the material sought and the subpoenas) (internal quotation marks and citation omitted); *Rudolf v. Soc. Sec. Admin. Office of Inspector*

5

*Gen.*, No. 13-03099, 2014 WL 2559136, at *3 (D.N.J. June 6, 2014) (noting that "the notion of relevancy" in the RFPA context "is broad," and rejecting a motion to quash because the agency's "*in camera* submissions show[ed] that the records being sought [we]re relevant to [a] legitimate law enforcement inquiry") (citations omitted); *see also E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) ("So long as the agency makes a 'plausible' argument in support of its assertion of jurisdiction, a district court must enforce the subpoena if the information sought there is 'not plainly incompetent or irrelevant to any lawful purpose' of the agency.") (quoting *Casey v. FTC*, 578 F.2d 793, 799 (9th Cir. 1978)).

GSA OIG's *in camera* submissions show that the financial records sought under the Subpoena are relevant to GSA OIG's assessment of Petitioner's relationship with VE Source, LLC in connection with its fraud investigation.[5] This assessment, in turn, is relevant to whether there has been fraud related to the Government Service Administration's government contract programs. The records sought are, therefore, relevant to the legitimate law enforcement inquiry being conducted by GSA OIG.

### III.  CONCLUSION

In summary, I find (1) that the Subpoena was issued in connection with a legitimate law enforcement inquiry, and (2) that the records sought are relevant to that inquiry. For the foregoing reasons, Petitioner's motion is **DENIED**.

---

[5] I am not persuaded by Petitioner's argument that any records pertaining to his "Gold" credit card account are not relevant to GSA OIG's investigation. While Petitioner claims that he has never used his Gold account for transactions related to VE Source, LLC, GSA OIG is still entitled to subpoena records pertaining to the Gold account to verify Petitioner's position. I also do not find Petitioner's other argument—that American Express might "inadvertently" produce records from a time period preceding that which is called for in the Subpoena—is a convincing reason to quash a subpoena. The Court cannot credit Petitioner's mere speculation that this might occur.

Dated: February 7, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge